UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIAMOND SERVICES MANAGEMENT COMPANY, LLC and FREDERICK GOLDMAN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> C&C JEWELRY MANUFACTURING, INC. and ROBERT G. CONNOLLY, <br><br> Defendants. | Case No. 19 C 7675 <br><br> District Judge John F. Kness <br><br> Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**

This matter is before the magistrate judge on referral. (D.E. 116.) Before the Court are two motions: (1) Defendant C&C Jewelry Manufacturing, Inc. ("C&C")'s Motion to Compel Production of Documents and Information (D.E. 93); and (2) Plaintiffs Diamond Services Management Company, LLC ("Diamond") and Frederick Goldman, Inc. ("Goldman")'s Motion to Seal (D.E. 100). The C&C motion to compel also includes a request to bar plaintiffs from producing the document in question with an "Attorneys' Eyes Only" designation under the protective order in effect in the case. The Court will proceed to discuss the relevant background, the motion to compel production of the information in dispute, the propriety of the attorneys'-eyes-only designation of certain information, and the motion to seal.

**I.  Background**

The parties to this lawsuit are, as their names suggest, in the jewelry business. Plaintiff Goldman dubs itself "one of the largest jewelry manufacturing companies in North America." (Compl. ¶ 14.) Goldman is the sole member and manager of Plaintiff Diamond, an entity that Goldman formed to license tungsten carbide jewelry to others in the jewelry industry. (*Id.* ¶¶ 14-

15.) Defendant C&C is one of plaintiffs' competitors, with whom plaintiffs have a patent licensing agreement. (*Id.* at ¶¶ 25, 92.) Defendant Robert G. Connolly owns and serves as president of C&C. (*Id.* at ¶ 4.)

In 2007, Goldman and Diamond entered into a patent licensing agreement with an individual named Trent West, who owns patents relating to tungsten carbide rings and methods for manufacturing such rings ("2007 Agreement"). (Compl. ¶¶ 16-18.) The 2007 Agreement permitted Goldman and Diamond to sublicense the patents, and in 2011, Diamond granted C&C a non-exclusive license to make, import, and sell "tungsten carbide finger rings" that either incorporated or were developed using the patents that Diamond licensed from West in the 2007 Agreement ("2011 Agreement"). (Compl. ¶¶ 19, 25.)

The 2011 Agreement obligated C&C to pay royalties to Diamond and limited C&C to selling the patented rings only to four customers: Army, Air Force Exchange Service ("AAFES"); Home Shopping Network ("HSN"); JC Penney Company, Inc.; and Wal-Mart Stores, Inc. (Compl. ¶¶ 50-53.) When C&C stopped paying Diamond royalties and started selling or offering for sale tungsten carbide rings to other customers – namely Jared, Kay Jewelers, and Zales, all three of which were long-standing customers of Goldman – Diamond cried foul, claiming that C&C had breached the 2011 Agreement. (*See* Compl. ¶¶ 57-66.) Plaintiffs assert claims for breach of contract (Count I), tortious interference (Count II), and a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 (Count III).

Relevant to the motions before the Court, C&C served a production request in October 2020, seeking from plaintiffs a copy of the 2007 Agreement. (D.E. 95, "C&C's Mem." at 1.) Plaintiffs ultimately produced a redacted version of the 2007 Agreement and a related amendment,

2

telling C&C's counsel that the redactions were "subject to common-interest legal privilege." (C&C Mem. 2.) Plaintiffs designated both documents as "Attorneys' Eyes Only." (*Id.*)

C&C's counsel considered plaintiffs' production deficient. (*See id.* at 2-3.) In C&C's counsel's view, plaintiffs failed to detail any basis for the claimed "common-interest privilege" and similarly failed to explain how the 2007 Agreement warranted an "Attorneys' Eyes Only" designation. (*See id.*).

During a meet and confer session requested by C&C's counsel, plaintiffs' counsel "alleged that the redacted information was limited solely to information regarding 'defense of the patents' at issue in the 2007 Agreement during litigation and asserted the same to be 'work product.'" (*Id.* at 3.) Plaintiffs' counsel also stated that the "Attorneys' Eyes Only" designation "was warranted due to the disclosure of product 'cost basis,' and that such information . . . relates to 'current or future business strategies' that might concern Kay Jewelers, Zales, or Jareds." (*Id.*)

## II. C&C's Motion to Compel Production of Information Redacted from the 2007 Agreement

The Court takes up C&C's motion to compel first. C&C moves under Rule 37 of the Federal Rules of Civil Procedure to compel plaintiffs to produce the 2007 Agreement in unredacted form. C&C makes two principal arguments in support of its motion. C&C argues that no common-interest privilege exists because, among other things, the language that plaintiffs claim is privileged does not appear to be privileged. (C&C Mem. 7-9.) C&C also argues that to the extent any common-interest privilege could have existed, no common interest could exist to cover the 2007 Agreement now because West sued Diamond in federal court in California in 2019 to enforce the 2007 Agreement. (*Id.* at 9-11.)

A.     **Legal Background:  Common-Interest Protection**

As for the common-interest "privilege," although it occasionally is called a "privilege," it exists as an exception to situations in which privilege protection that *already* extends to a particular document is waived by the sharing of that document with a third person.  *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007).  Here, plaintiffs assert that the material redacted from the 2007 Agreement is ultimately attorney work product, and that its disclosure to West in the 2007 Agreement does not do away with its work-product protection by virtue of the common legal interest plaintiffs say that they had and that was promoted by the communication of the redacted information.

Briefly, the purpose of the qualified privilege for attorney work product, which is codified in Federal Rule of Civil Procedure 26(b)(3), is to protect an attorney's thought processes and mental impressions against disclosure, and to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts. *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2018 WL 704693, at *3 (N.D. Ill. Feb. 5, 2018); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). To that end, the work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing, evaluating, and preparing a client's case. *See* Fed. R. Civ. P. 26(b)(3); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). It creates a "zone of privacy" for lawyers to "analyze and prepare their client's case free from scrutiny or interference by an adversary." *Miller UK Ltd. v. Caterpillar, Inc.,* 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014).  To determine whether the work-product doctrine protects documents sought in discovery, courts look to whether the documents contain an attorney's thought processes and mental impressions. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010). The party asserting the work-product doctrine bears the

burden of establishing that the doctrine applies to each document as to which it is asserted. *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017) (collecting cases).

In *BDO Seidman,* the Seventh Circuit described four principles that informed its analysis, and that inform this Court's analysis, of the scope of the common interest doctrine:

(1) Courts construe the privilege to apply only where necessary to achieve its purpose;

(2) Only those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyers' professional advice or other legal assistance fall within the privilege;

(3) Because one of the objectives of the privilege is assisting clients in conforming their conduct to the law, litigation need not be pending for the communication to be made in connection to the provision of legal services; and

(4) Because the privilege is in derogation of the search for truth, any exceptions to the requirements of the attorney-client privilege must be strictly confined.

*Id.* at 815. Courts including the Seventh Circuit also have described the common-interest doctrine's protection of communications as covering communications made to "promote" the common legal interest, in that the communication must be "for any defense purpose common to the participating defendants." *United States v. McPartlin*, 595 F.2d 1321, 1336-37 (7th Cir. 1979); *see also In re Pac. Pictures Corp*, 679 F.3d 1121, 1129 (9th Cir. 2012) (requiring communications to be in furtherance of a "joint strategy"); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (requiring that the specific communications for which common-interest protection is sought be "designed to further the [joint-defense] effort"); *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (holding that common-interest doctrine protected communications from one party to an accountant hired by a co-party's attorney where the communications were for "the ultimate purpose of assisting attorneys who had agreed upon and undertaken a joint strategy of representation."). If plaintiffs cannot establish that the redacted language is privileged or protected from disclosure in the first place, the common-interest doctrine does not come into play.

*McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 240 (N.D. Ill. 2014) (collecting cases).[1]

### B. Analysis

The material redacted from the 2007 Agreement relates to a "litigation budget" for future potential patent disputes that plaintiffs and West might need to litigate in the wake of plaintiffs' sublicensing of patents under the terms of the 2007 Agreement. In looking to the first of the four principles articulated by the Seventh Circuit in *BDO Seidman*, the Court must ask whether an underlying privilege could extend initially to the redacted portions of the 2007 Agreement. In this case, work-product privilege is asserted, so the communications must minimally "reflect the lawyer's thinking." *BDO Seidman*, 492 F.3d at 815.[2] Nothing in plaintiffs' response suggests that the redacted material represents "opinion work product," which is usually considered to be the mental impressions, conclusions, opinions, or legal theories of an attorney. *See* Fed. R. Civ. P. 26(b)(3) (advisory committee's note). But nor does the redacted material fit neatly into what courts might consider "ordinary work product," i.e., material that does not contain attorney mental impressions or theories but rather contains factual information, witness statements, investigative reports, or memoranda or recordings prepared in anticipation of litigation. *See* 8 Charles Alan Wright Et Al., Federal Practice & Procedure § 2024 (3d ed. West 2019).

---

[1] *See generally* David M. Greenwald & Michele L. Slachetka, *Protecting Confidential Legal Information: A Handbook for Analyzing Issues Under The Attorney-Client Privilege and The Work Product Doctrine* 213-14 Jenner & Block Practice Series (May 2019), https://jenner.com/system/assets/assets/10991/original/ 2019%20Jenner%20&%20Block%20Attorney-Client%20Privilege%20Handbook%20(Final).pdf (collecting cases).

[2] This question is separate from whether the anticipated litigation is too remote to invoke the protection of the work-product doctrine to a particular communication. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (requiring at least some articulable claim likely to lead to litigation, or some foreseeable prospect of litigation, in order for work product doctrine to apply). The Court does not reach that question today.

The Court has examined carefully the portions of the 2007 Agreement withheld by plaintiffs and submitted under seal. (Plaintiffs' Opposition to C&C's Motion to Compel ("Opp."; D.E. 101), Ex. E ("2007 Agreement"; D.E. 102).) Summarized in the form that might be appropriate for description in a privilege log, the withheld material includes:

- How the parties' calculation of royalties from sales to third parties would be affected by funds spent on litigation;

- The amount and limit of funds one party was to make available to the other for reimbursement of the other's litigation costs and expenses for litigation approved by both parties ("Patent Litigation Budget"), and the manner and methodology as to which such reimbursements would be made;

- The relationship between funds spent from the Patent Litigation Budget and other business and legal arrangements set forth in the 2007 Agreement; and

- The relationship between the Patent Litigation Budget and litigation to be pursued jointly under the 2007 Agreement.

(2007 Agreement at 4, 6-7, 9-11.)

Plaintiffs do not clearly say how exactly the foregoing "Patent Litigation Budget" and related references are work product, other than to argue that because the 2007 Agreement itself created a common legal interest in defending the enforceability and validity of the '734 Patent and other patents, a common legal interest existed between West and plaintiffs. (Opp. at 8-11.) The Court can agree, for the sake of argument, that a common legal interest existed, and that the redacted contractual provisions in the 2007 Agreement were in furtherance of such an interest. But plaintiffs have not advanced a reason why the Court ought to conclude that the "Patent Litigation Budget" materials disclose the thinking of any attorney, represents any type of opinion or non-opinion work product, or serves the purpose of promoting a joint legal *strategy*. The references promote a logistical form of support for the carrying out of joint legal strategies, in that they set forth a framework for West and plaintiffs to fund possible litigation and to create procedure for

7

funding and dipping into the Patent Litigation Budget as necessary. But these are business arrangements. They contain absolutely no disclosure of legal strategy or attorney mental impressions. (Plaintiffs do not argue that the redacted portions of the 2007 Agreement contain an attorney's thought processes or mental impressions – nor could they.) They do not promote the advancement of any particular legal strategy. They do not contain facts, assembly or ordering of facts, investigation results, or any discussion of how one or both parties might present a legal or factual position in some anticipated patent litigation. The Court is not willing to take on faith that an agreement as to how litigation might be funded could constitute a joint legal strategy. Even accepting that the redacted material was included in the 2007 Agreement with the intent of aiding the parties in the event of possible future litigation over the validity and enforceability of the patents covered by the 2007 Agreement, and that plaintiffs had good reason to anticipate litigation over those patents (*see* Opp. at 6-10),[3] plaintiffs' conclusion that the redacted material is attorney work product because the redactions "therefore governed how the parties would approach that lawsuit (and others)" does not follow. (*See id.* at 8.) Nothing about the redacted materials addresses any particular strategic or tactical approach; the "approach" governed by the "Patent Litigation Budget" and related, redacted provisions concerned only the business agreement as to how the parties might jointly fund their litigation expenses in defense of the patents.

---

[3] Assuming that the parties reasonably anticipated litigation, the idea that the communications contained in the redacted portions of the 2007 Agreement were made in anticipation of litigation for purposes of work-product protection is a more nuanced question, and another that the Court need not reach today. Such a conclusion would be a stretch. The Court would have to determine that the redacted language was prepared "in anticipation of litigation *for the purpose of analyzing and preparing a client's case*." *Sandra T.E.*, 600 F.3d at 618 (emphasis added). Analyzing and preparing a client's case is different than making agreements about the budget and about how funds will be paid and reimbursed in order that the parties' lawyers might engage in the nitty gritty of analyzing and preparing the case, perhaps communicating opinion or ordinary work product in that latter process.

The Court briefly deals with plaintiffs' argument that the redacted materials are beyond the scope of Rule 26(b)(1) discovery because they are not relevant to a claim or defense in the case.[4] (Opp. at 3-6.) As a preliminary matter, plaintiffs offer an oft-quoted maxim from Magistrate Judge Jeffrey Cole, to the effect that discovery is not an "excursion ticket" to an "unlimited exploration of every conceivable matter that captures an attorney's interest." (*Id.* at 3, citing *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014).) The Court is fond of this quotation and has found it applicable to many situations, although relevancy determinations in various factual settings call for individualized judicial analysis. As plaintiffs acknowledge (Opp. at 3), the Court has extremely broad discretion to manage discovery matters, including determinations of relevancy under Rule 26(b)(1). *See, e.g.*, *Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115 (7th Cir. 2013). This point bears repeating: The concept of relevancy embodied in Rule 26(b)(1) is different – and broader – that the concept of relevancy for purposes of admissibility at trial. *See Lymon v. Chamberlain*, No. 17 CV 50093, 2020 WL 6940985, at *6 (N.D. Ill. Nov. 24, 2020). Plaintiffs' ability to sublicense patents based on the 2007 Agreement is among the issues in this case. The 2007 Agreement itself is broadly relevant to the claims and defenses in the case, and although plaintiffs may restrict dissemination and use of the document under the applicable protective order, they may not cherry-pick portions of it that they would rather keep from defendants unless those portions are themselves privileged or somehow so far beyond the scope of Rule 26(b)(1) relevancy that they have no bearing at all on any claim or defense in the case for discovery purposes. The Court appreciates that plaintiffs believe that the redactions are work

---

[4] Plaintiffs have not argued the proportionality prong of Rule 26(b)(1) as a reason why the "Patent Litigation Budget" redactions are not discoverable. The Court easily concludes that they are not disproportional to the needs of the case, either in the sense of actual burden on plaintiffs in forking over the redacted material (as this is no burden at all), or in the sense of some collateral burden that compelled production might impose on a social policy or public interest.

product and not relevant for discovery here, but the Court in its discretion respectfully disagrees, however strong plaintiffs' argument might be *at trial* against the admissibility of the redacted materials.

The Court grants C&C's motion to the extent it seeks compelled production of the material redacted from the 2007 Agreement, where plaintiffs have withheld this material on grounds of attorney work-product or common-interest protection. The Court denies C&C's request for fees and expenses on its motion to compel under Rule 37(a)(5) (C&C's Mem. at 13). As the Court mentioned above, the material redacted from the 2007 Agreement and withheld by plaintiffs on "common-interest" grounds based on the work-product doctrine is simply not work product. But plaintiffs' argument as to the materials' lack of relevancy is at least a more colorable argument and thus one the Court will consider "substantially justified" under the rule. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

### III. Attorneys' Eyes Only Dispute

Next, C&C argues that the AEO designation (reflected in the materials highlighted in green in the sealed, filed 2007 Agreement (Opp., Exh. E)), as opposed to the yellow-highlighted portions reflecting the privilege claims that the Court rejects today) is improper under the Agreed Confidentiality Order that has been entered in this case. On December 2, 2020, the District Judge entered an Agreed Confidentiality Order (D.E. 91, "Confidentiality Order"), which sets up two levels of confidentiality designations: "Confidential Information" and "Highly Confidential or Attorneys' Eyes Only Information." (*Id.* ¶¶ 2-4.) Both categories are subject to the usual restrictions regarding use for any purpose other than the purposes of the litigation, but those marked AEO are subject to an additional stricture: the documents and the information they contain may not be disclosed to the parties. (*Id.* ¶ 7(a).) The Confidentiality Order provides that the AEO

designation applies to "Confidential Information" that the producing party contends "constitut[es] the parties' extremely sensitive information, the disclosure of which . . . would . . . result in serious competitive harm to the disclosing party and which would reveal current or future business strategies concerning Kay Jewelers, Zales, or Jareds only." (*Id.* ¶ 3.) C&C argues that the 2007 Agreement contains no such material. Plaintiffs respond that the 2007 Agreement's green-highlighted provisions have been properly designated AEO because the parties are direct competitors, and "[i]f Defendants are given access to the specific royalty and other related portions of the 2007 Agreement, [they] can calculate Plaintiffs' profits per sale, and then use those numbers to evaluate their own business and marketing plans." (Opp. at 13.)

The Court's review of the material sought to be designated as AEO (the green-highlighted material in Exhibit E to plaintiffs' opposition brief (D.E. 102)), makes clear that the portions of the 2007 Agreement sought to be designated as AEO disclose highly sensitive business information such as royalties and royalty rates, and the manner in which they are calculated. The AEO-designated language from the 2007 Agreement reveals how much plaintiffs are paying West in royalties, and that this information is directly competitive to C&C because it forms part of the cost of the rings that plaintiffs sell to their customers (including Kay Jewelers, Zales, or Jared), for whose business C&C also is vying. Disclosure of plaintiffs' royalty pricing and underlying calculations, if made beyond the attorneys, could well put plaintiffs at a competitive disadvantage because C&C, as their competitor, would know their royalty structure with West and thus a significant component of their cost basis.

The Court thus denies C&C's motion to compel to the extent it seeks to compel plaintiffs to produce the disputed information (highlighted in green on Exhibit E) as merely "confidential" and not AEO under the Confidentiality Order.

11

IV.     **Plaintiffs' Motion to Seal**

Finally, the Court's review of the 2007 Agreement confirms that it contains a sufficient level of sensitive competitive information to warrant protection under applicable Seventh Circuit law, so as to support good cause for sealing under Local Rule 26.2. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545-46 (7th Cir. 2002) (stating that filed discovery documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality …. In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of sexual assault) are entitled to be kept secret").

C&C opposed the motion to seal, arguing that Exhibit E was not properly served on C&C – because C&C never received an unredacted version of the document – so that C&C could not fully reply in support of its motion to compel. (C&C Response in Opposition to Plaintiffs' Motion to Seal ("Seal Opp."; D.E. 110) at 1.) But the Court is deciding the motion to compel production of the so-called "work product" redactions in C&C's favor, without having ordered C&C to reply in support of its motion. C&C is not prejudiced from not being served with the redactions in advance of a judicial ruling on C&C's motion to compel their production. Parties are not required to produce withheld materials, under claims of privilege, to their adversaries in litigation over the privilege claims.

C&C's argument as to the AEO aspect of its motion is a little better, because C&C appears to be saying that plaintiffs never gave C&C's counsel the sections designated for AEO treatment, thus making C&C argue "blindly" against the designations. (Seal Opp. at 4.) But C&C was not opposed to production of these portions of the 2007 Agreement to counsel on an

12

AEO basis, so the Court sees no reason why plaintiffs could not have supplied C&C's counsel, at its request, with the AEO-marked material so that C&C had a full and fair opportunity to litigate the AEO aspect of the motion. The Court is not aware of the extent of discussions among counsel on this point and thus intends no criticism. The matter simply strikes the Court as one that counsel could have resolved without court intervention. Ultimately, even though the Court in Part III of this order is denying C&C's prayer for relief on the AEO issue, the Court sees no prejudice to C&C here either, having reviewed the AEO portions carefully and independently before ruling that they should stay AEO.

In sum, the Court grants the motion to seal because the exhibit meets the legal requirements for sealing. C&C's concerns over the fairness of the litigation of its motion to compel do not warrant denying plaintiffs' motion to seal the 2007 Agreement. The motion and this ruling apply to the full document, i.e., the 2007 Agreement, and not just redacted or AEO portions of it, because it contains competitively sensitive, trade-secret information as a whole.

## CONCLUSION

For the foregoing reasons, C&C's motion to compel and to bar the AEO designation (D.E. 93) is partially granted and partially denied as set forth herein, with plaintiffs ordered to produce the unredacted 2007 Agreement to C&C within seven days of this order, and with the understanding that plaintiffs may continue to designate the indicated portions of the document as under an AEO restriction per the Confidentiality Order. Plaintiffs' motion (D.E. 100) to seal Exhibit E (D.E. 102) is granted, and that document shall remain under seal in its entirety.

**SO ORDERED.**

                                            **ENTER:**

                                            **GABRIEL A. FUENTES**
                                            **United States Magistrate Judge**

**DATED: March 26, 2021**