# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIAMOND SERVICES MANAGEMENT )
COMPANY, LLC and FREDERICK )
GOLDMAN, INC., )
                                        )   Case No. 19 C 7675

    Plaintiffs, )

                                          )   District Judge John F. Kness

    v. )

                                          )   Magistrate Judge Gabriel A. Fuentes

C&C JEWELRY MANUFACTURING, INC. )
and ROBERT G. CONNOLLY, )
                                          )

    Defendants. )

## MEMORANDUM OPINION AND ORDER

Having granted in part and denied in part plaintiffs' motion to compel (D.E. 158) in an order dated May 28, 2021 (D.E. 163), the Court reserved the question of whether to sustain objections by defendant Robert G. Connolly ("Connolly") to producing discovery while his motion to dismiss under Rule 12(b)(2) for want of personal jurisdiction (D.E. 30) remains pending before the District Court. The magistrate judge, who is acting under the District Court's discovery referral (D.E. 116), now resolves the question reserved in the May 28 Order over what, if any, discovery should Connolly be compelled to provide.

### INTRODUCTION

The discovery Plaintiffs seek from Connolly relates largely to his alleged communications with the customers or potential customers of defendant C&C Jewelry Manufacturing Co. ("C&C") about tungsten carbide rings (the product at issue in this case), and to his purported involvement in an anonymous request for a U.S. Patent and Trademark Office ("USPTO") re-examination of the '734 Patent (the primary patent at issue in this case). *See* Plaintiffs' [Supplemental] Submission

("Pl. Supp. Mem."; D.E. 165) at 9-11. The defense discovery responses are styled as coming from C&C, not Connolly, and each of the C&C responses states:

> None of the responses herein are made on behalf of Defendant Robert G. Connolly. As laid out in Defendants' Motion to Dismiss (Dkts. 30 and 31) and related briefing, Connolly is not subject to this Court's jurisdiction and has not filed an Answer in this Action. As a result, Plaintiffs are not entitled to any discovery from Connolly. To the extent necessary, this is a specific objection to each request propounded by Plaintiffs and is incorporated by reference into each response below.

Plaintiffs' Memorandum of Law in Support of First Motion to Compel (D.E. 159), Exhs. C and D (D.E. 159-3, 159-4) at 1 n.1.

In the Court's May 28 Order, the Court sought additional briefing (D.E. 165, 166) from the parties concerning the Court's authority to compel discovery from a party challenging personal jurisdiction. Plaintiffs have argued in the dismissal motion briefing that the discovery they seek is jurisdictional but is intertwined with merits discovery, insofar as they seek to controvert an affidavit Connolly filed in support of his motion to dismiss. (D.E. 61-1.) They reiterate that argument in their supplemental briefing on the discovery motion, but they also argue that to the extent Connolly possesses responsive documents, C&C has control over them because Connolly is an officer of C&C, and thus C&C has an obligation to produce them regardless of whether Connolly himself may be in actual possession of them. Pl. Supp. Mem. at 4, 8-9. The Court, at the May 28 motion hearing and in the May 28 order, framed the questions as largely concerning Plaintiffs' ability to compel Connolly to produce discovery notwithstanding his pending motion to dismiss for want of personal jurisdiction. But the question of possession and control of responsive documents is a part of the answer to whether the Court ought to compel the requested discovery.

For their part, Defendants argued in their supplemental briefing on the motion to compel that Plaintiffs generally should not be permitted "jurisdictional" or "merits" discovery[1] because their case for personal jurisdiction – the question pending before the District Court on the motion to dismiss the allegations against Connolly (D.E. 30) – is so weak that no *prima facie* case exists for personal jurisdiction and not even jurisdictional discovery should proceed, let alone merits discovery. Defendants' [Supplemental] Memorandum Regarding Jurisdiction and Discovery ("Def. Supp. Mem."; D.E. 166) at 3-6. Defendants' position on discovery from Connolly appears to assume that Connolly might possess information or documents in his personal capacity and cannot be compelled to produce in the absence of a *prima facie* case for personal jurisdiction.

## ANALYSIS

### I. C&C May Not Withhold Responsive Documents On The Ground That Connolly Possesses Them And Is Not Subject To Personal Jurisdiction.

The Court will address the question of whether discovery from Connolly may be compelled here, but Defendants do not dispute that to the extent discovery is propounded on C&C, which has not challenged personal jurisdiction, C&C must produce documents in its possession, custody and control. Plaintiffs argue that because Connolly is the chief executive officer of C&C, the documents that may exist in his possession, whether they are in a "personal" email account or from a "personal" telephone and relate to his conduct of C&C business, are under C&C's control and must be produced, even if C&C does not physically possess them. Plaintiffs' citation to Magistrate Judge Schenkier's decision in *Dexia Credit Local v. Rogan*, 231 F.R.D. 538 (N.D. Ill. 2004), is directly on point:

---

[1] The Court considers jurisdictional discovery to be discovery relating to the factual questions of whether Connolly purposefully directed his conduct at the state of Illinois, while merits discovery relates to factual questions over which side ought to prevail on Plaintiffs' breach of contract, tortious interference, and Illinois Unfair Trade Practices Act claims.

> On the issue of control, it is "well-settled that a party need not have actual possession of the documents to be deemed in control of them;" rather, the "test is whether the party has a legal right to obtain them." *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 423 (N.D.Ill.1977). *See also Comcast of Los Angeles, Inc. v. Top End International, Inc.,* No. CV 032213 JFWRCX, 2003 WL 22251149, *4 (C.D. Cal. July 2, 2003); *Avery,* 1998 WL 293002, at *2. This definition of control applies to persons and to corporations. *See In re Uranium,* 480 F. Supp. at 1144–45. For example, when the person from whom documents are sought "has practical and actual managerial control over, ... [a] corporate organization[,]" then that person is said to have "control" sufficient to order production of corporate documents. *In re Uranium,* 480 F. Supp. at 1145. *See also Societe Internationale v. Rogers,* 357 U.S. 197, 204, 78 S. Ct. 1087, 2 L.Ed.2d 1255 (1958).

*Dexia Credit Local*, 231 F.R.D. at 542.

Accordingly, if C&C is withholding any documents responsive to Plaintiffs' discovery requests (as limited by the Court in its May 28 Order) on the ground that Connolly possesses them personally and cannot be required to produce them, that objection is overruled. C&C has control of them and must produce them and respond to the applicable interrogatories, within the framework of the limitations the Court placed on Plaintiffs' discovery requests in the May 28 Order. For practical purposes, then, this conclusion means that if there are post-2017 communications to actual or potential customers (or to others so as to cause others to communicate) about tungsten carbide ring sales or about the '734 Patent, from Connolly's "personal" email or phone, or from some file cabinet or paper file in his "personal" office outside Illinois, C&C has a legal right to control them and must produce them. The same is true for communications (directly or indirectly through directions to others) to the USPTO about the '734 Patent, as sought by Document Request No. 15. C&C must produce those documents and may not hide behind its pending motion to dismiss to deny Plaintiffs their discovery on the ground that Connolly himself cannot be made to produce documents in only his actual possession.

## II.     Connolly Must Produce "Jurisdictional" Discovery

The Court's conclusion in Part I above may well resolve this discovery dispute, as the Court is having difficulty imagining how Connolly could possess a document relevant to C&C's conduct of business and have that document somehow be in solely his actual control, and not the control of C&C.  But if we indulge that argument for a moment and assume that there is some document that C&C does not have a legal right to obtain and that is in only Connolly's possession, we reach a similar conclusion.  He must produce jurisdictional discovery.  The sought-after jurisdictional discovery here is significantly intertwined with merits discovery.  Plaintiffs are entitled to that discovery.

### A.  Legal and Procedural Background

A bit of legal and procedural background is necessary to understanding the posture in which the Court is granting Plaintiffs' motion to compel.

In deciding the motion to dismiss for want of personal jurisdiction, the District Court will consider whether plaintiffs have made a *prima facie* case for personal jurisdiction; so far, no evidentiary hearing has been held, so ordinarily, the District Court would take Plaintiffs' asserted facts as true and resolve any factual disputes in plaintiffs' favor.  *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010).  Plaintiffs' alleged in their pleading that Connolly sold and offered for sale goods in Illinois.  Complt. (D.E. 1) ⁋ 11.  Connolly, though, has submitted affidavits, starting with the affidavit he filed with his *reply* on his motion to dismiss (D.E. 61-1), and then adding a supplemental affidavit (D.E. 121) just before Plaintiffs' filed their sur-response in opposition to the dismissal motion.  In granting leave to file the sur-response, the District Court denied Plaintiffs' motions to strike the first affidavit (D.E. 63) and for expedited discovery into Connolly's contacts with the USPTO (D.E. 105), but the District Court's order apparently did not

anticipate a second Connolly affidavit in referring discovery in this case to the undersigned magistrate judge. (D.E. 115.) In the affidavits, Connolly first stated that he traveled to Illinois only once, on September 27, 2011, during negotiation of the 2011 License Agreement, and then stated that his review of his email later reminded him that he traveled to Illinois on a second occasion, on May 10, 2013, for a meeting with Jonathan Goldman (alleged to be a co-operator of Plaintiff Frederick Goldman Inc. (*see* Compl. ¶ 14)) about selling Connolly's business to Goldman. (D.E. 61-1, 121.) Meanwhile, Connolly denied having "personal contacts with anyone residing in the State of Illinois" other than the two meetings and maintained that he did not "prepare[] or file[]," and did not "assist[]" or "request[]" in the "preparation or filing" of a certificate of correction with the USPTO with respect to the '734 Patent. (D.E. 61-1 at 1-3.)

The two affidavits, filed as they were after Plaintiffs already responded to the motion to dismiss, raise a few questions. Did Connolly cause others to solicit Illinois retailers in a manner Plaintiffs would say breached the 2011 License Agreement? If Connolly did not prepare or file a certificate of correction or did not "assist" in those activities or make a "request" concerning them, did he do something else to cause or prompt the re-examination of the '734 Patent? *See Curry v. Revolution Labs, LLC*, 949 F.3d 385, 396-99 (7th Cir. 2020) (tracing the movement of U.S. Supreme Court jurisprudence on personal jurisdiction away from defendants' physical presence in the state to the nature of their contacts with the state, including whether defendants caused their products, for example, to be distributed in the state). The Court does not purport to know what Connolly did or did not do. But the Court considers these subject matters as ripe for jurisdictional discovery. As the District Court takes up the motion to dismiss for want of personal jurisdiction, it may "weigh the affidavits," but as the District Court evaluates whether the *prima facie* standard has been satisfied, Plaintiffs are "entitled to the resolution of all disputes concerning relevant facts

presented in the record." *Id.* at 393 (internal quotations omitted). There is clearly a dispute in the record here about what Connolly did or did not do concerning customer contacts and the patent re-examination. The Court agrees that Paragraph 11 of the Complaint is thin on its face, but minimally, in combination with Connolly's carefully worded affidavits submitted after Plaintiffs responded to the motion to dismiss, Paragraph 11 does create a dispute – on the motion to dismiss – that the District Court will need to resolve. The District Court could decide that it already has heard enough to rule, but under the circumstances and for the reasons stated below, the magistrate judge sees no reason to deny Plaintiffs the jurisdictional discovery they seek.

**B. Personal Jurisdiction and Discovery**

The authorities cited by the parties suggest, collectively, that jurisdictional discovery ought to proceed here, and that the discovery Plaintiffs seek from Connolly involves an intertwining of jurisdictional and merits discovery.

Defendants cite several decisions in which jurisdictional discovery was denied where the court also concluded either that personal jurisdiction did not exist or that the party seeking the discovery had fallen short of establishing a *prima facie* case of personal jurisdiction. *See Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 WL 5763637, at *4-5 (N.D. Ill. Sept. 28, 2020) (granting motion to dismiss for lack of personal jurisdiction, denying jurisdictional discovery, and commenting that "[g]enerally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted") (citing *John Crane v. Simon Greenstone Panatier Bartlett, APC*, No. 16 C 5918, 2017 WL 1093150, at *12 (N.D. Ill. Mar. 23, 2017)); *Rawlins v. Special Select Hosp. of Nw. Indiana, Inc.*, No. 13 C 7557, 2014 WL 1647182, at *5-6 (N.D. Ill. Apr. 23, 2014) (holding that no *prima facie* showing of personal jurisdiction was

made for purposes of jurisdictional discovery where court was granting the motion to dismiss); *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782-83 (N.D. Ill. 2009) (granting motion to dismiss for lack of personal jurisdiction, and denying jurisdictional discovery where plaintiff could not make *prima facie* showing of jurisdiction as the record was "not ambiguous or unclear" on the jurisdiction issue); *Brown v. Swagway*, No. 15-cv-588-JVB-CAN, 2016 WL 10749147, at *2 (N.D. Ind. Aug. 2, 2016) (denying motion for jurisdictional discovery where court concluded that based on the pleading and an unrefuted affidavit from the party contesting personal jurisdiction, the movant had not established a *prima facie* case justifying personal jurisdiction).

Defendants' other authorities color in the general notion that although courts are reluctant to allow even jurisdictional discovery where personal jurisdiction seems clearly absent, jurisdictional discovery is still permitted in some circumstances to allow courts to determine whether they have jurisdiction. In *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 759-60 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017), the district court denied a request for worldwide asset discovery from Tokyo- and Paris-based international banks which had branches in Chicago but no responsive information there; the banks also were not parties to the litigation. In affirming the district court, the Seventh Circuit concluded that insofar as the U.S. branches did not have any assets, the district court had no personal jurisdiction over the branches' foreign parents. 852 F.3d at 690. But the court reached a different conclusion in *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138 (N.D. Ill. 1979). Although much of the holding of *Uranium* relates to whether and when a court should exercise its discretion to compel such a response amid considerations of international comity and foreign laws restricting document disclosure, the case is clear that a court has the jurisdiction to determine its jurisdiction. 480 F. Supp. at 1148-51.

Notably, *Uranium*, which also is relied on by Plaintiffs, enforced a subpoena against one entity, Noranda, which argued that the court had no personal jurisdiction over it. *Id.* at 1150-51. The *Uranium* court found that Noranda had supported its opposition to personal jurisdiction with "self-serving and uncorroborated assurances that [the requested documents] do not establish its contacts with this state. Plaintiffs are not required to accept these assurances, and are entitled to make their own inspection of the documents." *Id.* at 1151. The *Uranium* court also confirmed that it had jurisdiction to establish its jurisdiction, *id.*, as does this Court. In addition, the *Uranium* court was concerned that segregating documents according to whether they related to "merits" or "jurisdictional" discovery "will likely involve the unreviewable discretion of the party segregating or withholding them," so that "an order requiring full production is necessary." *Id.* Accordingly, if merits and jurisdictional discovery are intertwined, a court may in is discretion order full production. *Id.*; *see also Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013) (confirming the broad discretionary authority of magistrate judges over management of discovery).

The Court has the same concern here as did the court in *Uranium*. First, the Court disagrees with Defendants that whether Connolly contacted the USPTO about the re-examination of the '734 Patent "has nothing to do with personal jurisdiction." *See* Def. Supp. Mem. at 2. If Connolly did so or directed others to do so, his course of conduct was directed at Illinois to the extent he sought to cause the '734 Patent to be invalidated so he or his company could sell tungsten carbide rings in Illinois notwithstanding the 2011 License Agreement, and that then would be an issue relevant to personal jurisdiction as well as a merits issue. Second, this record is fundamentally different from the record in the bulk of the authorities on which Connolly relies, such as *Rawlins, Ticketreserve* and *Leibovitch*, in that the defendants opposing jurisdictional discovery in those cases were able to avoid it because the courts were granting the dismissal motions in any event for

9

lack of personal jurisdiction. The record here is not clear and unambiguous as to the absence of personal jurisdiction, based on review of the Complaint and the Connolly affidavits. The two Connolly affidavits, taken together, focus mostly on how Connolly physically visited Illinois only twice. As to his contacts or directions concerning customer solicitation and contacts with the USPTO, the affidavits give rise to a dispute that Plaintiffs ought to have an opportunity to test in discovery. This case therefore is more like *Uranium* and the unsuccessful effort by the Noranda defendant in that case to avoid jurisdictional discovery through "self-serving and uncorroborated assurances" that the court allowed the *Uranium* plaintiffs to test by permitting an inspection of documents, and by not forcing plaintiffs to accept Noranda's assurances. 480 F. Supp. at 1151.

In addition, in *Brown*, the magistrate judge noted that the plaintiff seeking jurisdictional discovery "could have sought an extension of time to respond to [the defense's] motion to dismiss until the undersigned could rule on the pending motion for discovery" but did not do so. 2016 WL 10749147, at *1. Here, Plaintiffs have sought jurisdictional discovery for several months now, including in response to the two affidavits, the first of which was filed on defendants' *reply* in support of its motion to dismiss. Moreover, in *Brown*, all the plaintiff could do in support of his argument for jurisdictional discovery was point to a website the defendants had maintained, and the pleadings did not even allege that the putative class in that case had even a single resident of Indiana (the state in question where personal jurisdiction was sought to be established) who had purchased the product at issue in that case. 2016 WL 10749147, at *2. As conclusory as Connolly wants to call it, Plaintiffs' pleading does allege that he did business in Illinois by selling, offering for sale, and marketing goods in the state. Compl. ⁋ 11. Compelling Connolly to produce the requested discovery here is a determination on which different courts might reach different conclusions, but this Court was swayed by the procedural posture of how Connolly submitted his

affidavits, and by the questions those affidavits raised, so that the Court exercises its broad discretion in favor of ordering the requested discovery.

## CONCLUSION

To that end, the Court grants Plaintiffs' First Motion to Compel (D.E. 158) in full as to responsive documents C&C may be withholding on any claim that Connolly, and not C&C, is in actual possession of them. The Court further grants Plaintiffs' motion as to Connolly, requiring him, to the extent he or C&C contends that any responsive documents exist in Connolly's sole possession and not within C&C's legal right to control, to respond to the discovery requests Plaintiffs have pressed in their motion to compel jurisdictional discovery: Document Request Nos. 5, 7, 8 and 10 (as well as 15), and Interrogatory Nos. 2, 3, 5 and 8. *See* Pl. Supp. Mem. at 9-11. The limitations the Court placed on C&C's responses to these requests, as stated in the Court's May 28 Order, still apply.

Defendants' compliance with this order needs to be prompt if it is to be meaningful. The Court orders Defendants to serve their responses and produce documents no later than 5 p.m. on June 25, 2021.

**SO ORDERED.**

ENTER:

GABRIEL A. FUENTES
**United States Magistrate Judge**

**DATED: June 15, 2021**

11