# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIAMOND SERVICES MANAGEMENT )
COMPANY, LLC and FREDERICK )
GOLDMAN, INC., )
　　　　　　　　　　　　　　　　)　Case No. 19 C 7675
　　Plaintiffs, )
　　　　　　　　　　　　　　　　)　District Judge John F. Kness
　　v. )
　　　　　　　　　　　　　　　　)　Magistrate Judge Gabriel A. Fuentes
C&C JEWELRY MANUFACTURING, INC. )
and ROBERT G. CONNOLLY, )
　　　　　　　　　　　　　　　　)
　　Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court are two discovery motions: (1) Plaintiffs' Second Motion to Compel ("Second Motion"; D.E. 192); and (2) Defendant C&C Jewelry's Fourth Motion to Compel ("Fourth Motion"; D.E. 194). This matter is before the magistrate judge on discovery referral (D.E. 116). The Court has reviewed the briefing on these two motions (D.E. 192, 193, 200, 194, 199, 212), in which each party seeks to compel the other to produce documents being withheld on claims that the documents are shielded from discovery by the common-interest doctrine.

## BACKGROUND

Although the Court has been over the background facts in earlier opinions, *see* 4/8/21 Order (D.E. 133) at 2-3, these facts are complicated and warrant a brief regurgitation. The Complaint (D.E. 1) roughly alleges as follows:  Plaintiff Frederick Goldman, Inc. ("Goldman"), a large jewelry manufacturer, created plaintiff Diamond Services Management Co. LLC as a separate legal entity for licensing purposes. On October 7, 2007, an inventor named Trent West, who is not a party to this suit, licensed Diamond and Goldman (collectively, "Diamond") exclusively to sell a certain type of jewelry, known as tungsten carbide (finger) rings, based on West's owning

various patents ("the Licensor Patents") including the 6,928,734 Patent ("the '734 Patent"). The Complaint refers to this agreement between West and Diamond as "the 2007 Agreement." Complt. (D.E. 1) ¶ 16. Defendant C&C Jewelry Manufacturing, Inc. ("C&C"), is a competitor to Diamond. C&C's principal is defendant Robert G. Connolly ("Connolly"). C&C was involved in patent infringement litigation of its own with West, and Diamond alleges in this lawsuit that a settlement of the patent litigation between West and C&C resulted in a license agreement between C&C and Diamond, effective December 14, 2011 ("the 2011 License Agreement") *Id.* ¶¶ 23-25.

The 2011 License Agreement forms much of the basis for the instant litigation. Under the 2011 License Agreement, Diamond alleged, Diamond granted C&C a non-exclusive license to make, use, import, offer for sale, and sell certain tungsten carbide jewelry finger rings ("the Licensed Products") to several specific, named customers. *Id.* ¶¶ 25, 27. The parties disagree over whether, as Diamond contends, the 2011 License Agreement barred C&C from selling to other retailer customers and from challenging the validity, enforceability, or scope of the licenses under the relevant patents. First Amended Answer (D.E. 117), ¶¶ 29, 34. The parties appear to agree that the 2011 License Agreement was to expire upon the expiration of the Licensor Patents, which Diamond contends (at least as to the '734 Patent) will not expire until August 13, 2023, whereas Defendants contend that the '734 Patent and the 2011 License Agreement already have expired. *Id.* ¶¶ 35, 36. The question of whether patent expiration occurred or was to occur on December 24, 2018, as C&C contends, is an important issue in the lawsuit. Expiration of the patent(s) and/or the 2011 License Agreement was a relevant consideration for C&C and any prospective retailer to which C&C might wish to sell tungsten carbide rings, insofar as Diamond contends that the '734 Patent and the 2011 License Agreement have not expired and that the 2011 License Agreement prohibits C&C from selling to any retailer except those named in the 2011 License Agreement:

2

the Army, Air Force Exchange Service; Home Shopping Network; JC Penney & Co.; and Walmart Stores, Inc. ("the Named Retailers").

The instant litigation centers on allegations that Defendants breached the 2011 License Agreement by failing to pay royalties after December 24, 2018, and by selling or attempting to sell tungsten carbide finger rings to retailers other than the Named Retailers. Diamond also accuses Defendants of misrepresenting, to the prospective customers other than the Named Retailers, the status of the '734 Patent as expired and the status of the 2011 License Agreement as terminated. *See* Complt. ¶ 83. Those retail jewelers with whom Diamond alleges that Defendants wrongly did business or sought to do business include Jared, Kay, and Zales (collectively, "Sterling" or "the Sterling Retailers," each of which operates under a parent company known as Sterling Jewelers, Inc., better known as "Signet"). Another retailer not listed in the 2011 License Agreement, and also off-limits to C&C as a customer during the life of that agreement, according to Diamond, is Helzberg Diamonds ("Helzberg").

Plaintiffs' causes of action are for breach of contract, tortious interference with prospective economic relations violation of the Illinois Unfair Trade Practices Act. In addition to denying that the '734 Patent and the 2011 License Agreement remain in force, and that Defendant agreed not challenge the '734 Patent, C&C[1] denies breaching the 2011 License Agreement. C&C also denies Plaintiffs' allegation that Defendants caused a filing with the U.S. Patent and Trademark Office ("USPTO") in April 2019, requesting that USPTO issue a "certificate of correction" which would have rendered the '734 Patent expired. The unsuccessful requested certification of correction, Plaintiffs allege, sought to persuade the USPTO that it had improperly issued earlier patent

---

[1] Defendant Connolly has not answered or counterclaimed, as he is challenging personal jurisdiction on a still-pending motion to dismiss. He is also not a movant on the C&C motion to compel. From time to time, this Order will refer to "Defendants" to describe C&C and Connolly, but that is without prejudice to Connolly's assertions on his motion to dismiss.

certificates of correction on September 25, 2018, and January 8, 2019. Those certificates of correction are at the center of C&C's counterclaim for a declaratory judgment that the 2011 License Agreement expired on or before December 24, 2018. C&C contends that Plaintiffs improperly sought and obtained the September 2018 and January 2019 certificate of correction to extend wrongly the life of the '734 Patent to August 2023. Plaintiffs contend Defendants were behind the April 2019 request for a correction (ultimately not granted by the USPTO) of the September 2018 and January 2019 certificates of correction. C&C's Counterclaim seeks a judgment declaring the '734 Patent invalid and unenforceable, thereby invalidating the 2011 License Agreement at least as of December 24, 2018.

Meanwhile, in another development pertinent at least to Defendants' Fourth Motion to Compel, the inventor West initiated a separate federal lawsuit against Plaintiffs in May 2019 in the Northern District of California, claiming that Plaintiffs owed West unpaid royalties under the 2007 agreement between West and Plaintiffs. C&C Jewelry Mfg., Inc's Memorandum in Support of Its Fourth Motion to Compel ("Def. Mem."; D.E. 195), Exh. A. Defendant asserts that West's 2019 lawsuit, No. 19-cv-2472 in the Northern District of California ("the 2019 West Royalty Suit"), since has settled. *Id.* at 4. Defendant also calls to the Court's attention a second, more recent West lawsuit against Plaintiffs, alleging that Plaintiffs paid West their outstanding royalty balance due under the 2019 West Royalty Suit but then resumed not paying royalties in July 2019; West filed this lawsuit in August 2021 in the Northern District of California, No. 21-cv-5329 ("the 2021 West Royalty Suit"), again to collect the allegedly unpaid royalties. C&C Jewelry Mfg., Inc's Reply in Support of Its Fourth Motion to Compel ("Def. Reply"; D.E. 212), Exh. B.

## DISCUSSION

Under Federal Rule of Civil Procedure 37(a), when a party does not respond properly to a discovery request, the party that issued the request may file a motion to compel a proper response. Fed. R. Civ. P. 37(a); *Eternity Mart, Inc. v. Nature's Sources, LLC,* No. 19 C 2436, 2021 WL 4894701 at * 2 (N.D. Ill. Oct. 10, 2021). The court then must independently determine the proper course of discovery. *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, No. 12 C 1446, 2013 WL 505252, at *2 (N.D. Ill. Feb. 12, 2013). When doing so, the court has significant discretion. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Ultimately, the party objecting to discovery bears the burden to show the requested discovery is improper. *Life Spine, Inc. v. Aegis Spine, Inc.,* No. 19 C 7092, 2021 WL 5415155 at *4 (N.D. Ill. Nov. 19, 2021). Where one party seeks to compel the other to produce a responsive document, and the other party objects by asserting a privilege, the withholding or objecting party bears the burden of establishing that the asserted privilege applies to each withheld document, as to which the objecting party must present "'an explanation sufficient for the court to determine whether the party has discharged its burden.'" *Baxter Int'l, Inc. v. AZA Versicherung,* 320 F.R.D. 158, 161-63 (N.D. Ill. 2017), quoting *Lislewood Corp. v. AT&T Corp.*, No. 13 C 1418, 2015 WL 1539051, at *3 (N.D. Ill. Mar. 31, 2015).

Here, the Court already conducted an *in camera* review of the withheld emails, in the interest of efficiency. *See* Fed. R. Civ. P. 1. During its review, the Court could not help but note that the logs themselves raised a few issues involving the adequacy of the parties' Rule 26(b)(5) disclosures to each other. More specifically, several of the withheld documents are email chains, and only the most recent of those emails were logged. *See, e.g.,* Plaintiffs' Privilege Log (D.E. 195-3, Entry Nos. 38, 39, 47, 49, and 63); Defendant's Privilege Log (D.E. 193-3, Entry Nos. 130,

5

151).  Without having identified all the senders, recipients and subject matters of the components of these email chains, the parties have made it difficult for each other and for the Court to assess each other's privilege claims over the component items in the chains.  But this is now an old, much-discussed, and still-unresolved problem in electronic discovery.  By not itemizing all emails in the chain, both parties have followed an approach that arguably complied with *Muro v. Target Corp.*, 250 F.R.D. 350, 362-63 (N.D. Ill. 2007), *aff'd on other grounds*, 50 F.3d 485 (7th Cir. 2009).  Without instructing courts as to how much specificity they ought require in a log including email chains or strings, *Muro* contains a suggestion, at least, that when a party withholds an entire email string in which a party has forwarded to its counsel (or counsel has forwarded to his or her party client) a series of prior communications or materials, the withholding party must "disclos[e] those prior materials themselves," but without doing so in a manner that so associates the materials with other emails in the string that the disclosure reveals privileged information because it tells the requesting party what was being communicated in a privileged setting.  *Id.* at 363.  At least one other court, largely following *Muro*, has said that where the component parts of the string were not produced in the litigation, the withholding party must disclose them separately, i.e., not in the same log entry as the withheld communication in which the component parts were forwarded between attorney and client.  *See Rhoads Indus., Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238, 240-41 (E.D. Pa. 2008), citing *Muro*, 250 F.R.D. at 363.  The Court is choosing deliberately not to resolve the question of whether either side's privilege log was adequate under Rule 26(b)(5), because to do so would only bring more briefing and more delay over issues that the Court can resolve finally by determining, from the *in camera* review, whether the documents could be withheld at all or whether they must be produced.

As for the nature of the common-interest privilege, which is the basis for Plaintiffs' and Defendants' withholding of the documents targeted by the respective motions to compel, it is "really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman*, 492 F.3d 806, 815 (7th Cir. 2007). The common interest doctrine is applicable when (1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further the foregoing ongoing legal enterprise. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020), citing *BDO Seidman*, 492 F.3d at 815-16; *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014). The party asserting the common interest doctrine and privilege bears the burden of showing that it applies and has not been waived. *Dealer Mgmt.*, 335 F.R.D. at 514. But, importantly, the derivative nature of the common-interest privilege means that it is not an independent privilege or an independent basis to withhold a responsive document from production in civil discovery:

> The doctrine allows communications that are already privileged to be shared between parties having a "common legal interest" without a resultant waiver …. Unless the party asserting the 'common interest' establishes that the withheld documents were otherwise privileged, the "common interest" doctrine does not come into play.

*Gerba v. Nat'l Hellenic Museum*, 338 F. Supp. 3d 851, 859 at n.2 (N.D. Ill. 2018); *see also Terra Fdn. for American Art v. Solomol+Bauer+Giambastiani Architects, Inc.*, No. 14 C 3012, 2015 WL 1954459, at *3 (N.D. Ill. Apr. 29, 2015) ("the common interest privilege only protects communications that otherwise already are privileged"), citing *McCullough v. Fraternal Order of Police*, No. 12 C 9359, 2014 WL 2514623, at * 5 (N.D. Ill. June 4, 2014).

Courts consider a number of factors in determining whether the common interest doctrine applies, including:

> (1) whether the interest is a common *legal* interest, as opposed to a business or rooting interest;

> (2) whether the parties are or anticipate being engaged in litigation;

> (3) against a common adversary;

> (4) regarding the same or similar issues;

> (5) whether the parties have expressed an intent to cooperate, such as by a written agreement;

> (6) whether the parties have the same legal counsel; and

> (7) whether it is in the interest of justice and fairness to preventing disclosure of the information.

*Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 949333, at *5 (N.D. Ill. Mar. 12, 2021). Further, the party seeking to apply the common interest doctrine need not establish the existence of every one of the above factors, and a written common interest agreement is not required to invoke the common interest doctrine. *See Chamberlain Mfg. Corp. v. Maremont Corp.,* No. 90 C 7127, 1993 WL 625511, at *4 (N.D. Ill. July 21, 1993). Although some courts have indicated that the parties' particular common interest need not be identical, *Andritz Sprout Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 634 (M.D. Pa. 1997), courts in this district have tended to require that the interest be identical with respect to the subject matter of the underlying, privileged communication over which common interest is sought. *Dealer Mgmt.*, 335 F.R.D. at 514; *Graco Children's Prods., Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd*., No. 95 C 1303, 1995 WL 360590, at *5 (N.D. Ill. June 14, 1995).

Also, courts in this district and this circuit have described the common interest necessary to extend privilege protection as a common "legal" interest, but they also have found the common

interest sufficient for privilege protection when that interest overlaps with a business interest. In *BDO Seidman*, for example, the Seventh Circuit held that the common-interest doctrine applied where the two parties sharing privileged information were joint venturers who had planned their business conduct "based on sound legal advice predicated on open communication." 492 F.3d at 816. In another example, in *Terra*, Magistrate Judge Gilbert extended common-interest protection to otherwise privileged communications between an architectural firm and a mechanical engineering concern that had a business relationship in connection with the engineering and design of vaults for an art museum that had sued the architectural firm over purported design flaws. 2015 WL 1954459, a *4. After the museum sued the architects, the architect consulted with counsel and shared the communication with the mechanical engineer, and Judge Gilbert found that the common-interest doctrine protected that communication from disclosure because "it certainly was reasonable to assume" that the engineer's services rendered in connection with design of the art vaults "potentially could be implicated by [the museum's] complaints of alleged defects in the work" performed by the architects on the vaults. *Id.* at *4-5. The party entity and the third-party entity (with whom otherwise privileged communications were shared) need not be in perfect alignment but need only demonstrate "cooperation toward a common legal goal," so that the common-interest doctrine "applies to any parties that have a common interest in 'potential litigation.'" *Id.* at *5, citing *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008).

## I.    Plaintiffs' Second Motion to Compel

Plaintiffs' Second Motion (D.E. 192) is the more significant and challenging of the two motions to compel. It seeks compelled production of 14 documents that defendants withheld as privileged in a log excerpted in Table A of Plaintiffs' supporting memorandum ("Plaintiffs'

Memorandum in Support of Second Motion to Compel ("Pl. Mem."; D.E. 193), and seven documents withheld as privileged in a log excerpt found at Table B of the same memorandum. Pl. Mem. at 4-6. Defendants are withholding these documents under an assertion of the common-interest "and/or" attorney-client privileges, per their opposition memorandum. Defendants' Response in Opposition to Plaintiffs' Second Motion to Compel ("Def. Opp."); D.E. 200 at 1. Defendants seek to assert a common-interest privilege to prevent disclosure of communications between them and the Sterling Retailers (the Table A documents) and between them and Helzberg (the Table B documents), as Defendants say the communications were exchanged in connection with a joint legal strategy to avoid patent infringement and other claims. *Id.* at 3.

> Each [retailer] was directly contacted by [one or both Plaintiffs]. Plaintiffs asserted the continued existence and validity of the '734 patent, and that the '734 patent would allegedly prevent any unauthorized sale of rings containing tungsten carbide. *Thus, a common legal interest exists between these parties with respect to the existence and validity of the '734 patent, the necessity of obtaining or continuing to pay a license, and the ability to avoid allegations of patent infringement. Any communications and exchanges between the parties in furtherance of that interest is protected.*

*Id.* at 3-4 (emphasis added).

Plaintiffs, on the other hand, argue that the withheld documents "provide further evidence that Defendants were aware of their potential legal exposure based on the valid License Agreement, which would support an inference that Defendants acted without justification." Second Motion at 9. The withheld documents may or may not contain such evidence. But the conclusion that withheld documents are highly probative does not necessarily lead to the conclusion that a privilege does not apply to them or should be overridden. A person who confesses a murder to his lawyer is not at risk of having that privileged confession discovered and admitted into evidence in his murder prosecution simply because the confession may establish his guilt. The Court must analyze each of the documents to determine whether and how privilege

applies to warrant their protection from disclosure based on (1) whether they are privileged in the first instance, as an attorney-client privileged communication or a work-product protected document, and (2) whether the sharing of such communications would not result in waiver of those privileges because of the applicability of the common-interest doctrine.

The Court reviewed *in camera* the 14 documents from "Table A" and the seven from "Table B" of Plaintiffs' supporting memorandum, Pl. Mem. at 4-5, but before walking through the document-by-document analysis, we begin with the important conclusion that C&C does have a common legal interest, both with the Sterling Retailers and with Helzberg, that would protect from disclosure any otherwise privileged communications they shared in furtherance of their ongoing legal enterprise. The legal interests in common, as between C&C and the Sterling Retailers and as between C&C and Helzberg, stemmed from the validity and enforceability of the '734 Patent. Very simply, there was a question as to when that patent would expire, either in late 2018 or at some time later; Plaintiffs contend it expires in August 2023 by virtue of actions that Plaintiffs took in the USPTO and that Defendants challenge. But the question over patent expiration also encompasses a question over the obligations that C&C had, and the liabilities that it and Sterling and Helzberg may have had, arising from the 2011 License Agreement. C&C, Sterling and Helzberg all had reason to believe that as long as the patent had not expired, each had possible liability, and each was exposed to possible litigation, if Sterling and Helzberg, respectively, began purchasing tungsten carbide rings from C&C and not Plaintiffs.

The Sterling Retailers had been customers of Plaintiffs for many years. Pl. Mem. at 8. Helzberg apparently was not a current customer of Plaintiffs, but nor was Helzberg among the Named Retailers to which C&C was authorized to sell patent-covered products under the License Agreement. Both Sterling and Helzberg, then, had reason to be concerned about potential litigation

11

for actions including tortious interference with Plaintiffs' rights under the License Agreement if the '734 Patent remained valid and if they were to do business with C&C on patented products. C&C also had reason to be concerned about similar potential litigation or legal exposure from business they were to transact with the Sterling Retailers or with Helzberg. The common interests that C&C had with the Sterling Retailers and with Helzberg were not mere business or rooting interests, although business interests lay at the root of the common interests. The common interests were legal interests: Each of the respective entities wanted to avoid or at least minimize legal exposure, which each had reason to believe was a real possibility.

*Terra* provides an apt analogy, and the common interests here support applicability of the common-interest doctrine for the same reasons Judge Gilbert found existed in *Terra*. The interests in common also were sufficiently "identical" to warrant applicability of the doctrine. C&C and Sterling, and C&C and Helzberg, had common interests in minimizing legal exposure – from the same adversary, i.e., Plaintiffs – that each knew could ensue from validity of the '734 Patent and from the License Agreement's limitations, to the extent that agreement still was valid, on the entities to which C&C could sell tungsten carbide rings. In short, the various factors set forth above per *Breuder* weigh in favor of our finding the foregoing common legal interests, even if Plaintiffs have not sued the Sterling Retailers or Helzberg, and even if C&C had a formal common-interest agreement with only the Sterling Retailers and not Helzberg.

And now, on to the documents.

### A.    Communications Between C&C and the Sterling Retailers (Table A).

#### 1.    Non-Privileged Documents Not Covered By the Common-Interest Doctrine

We begin with the documents that warrant no common-interest protection because they are not privileged in the first instance.

*Document Nos. 54, 56, 58, 59, 61, 62, 139, 166.* All of these documents are email chains containing some or all of the same group of email communications between attorney Friedman of Signet and attorney Fischer, who was C&C's patent attorney. With one exception, none of the emails in any of the chains contains privileged attorney-client information, and thus, they must be produced. Specifically, all of the non-privileged email messages consist of nothing more than introductions between lawyers or transmittals of drafts of what eventually became the common interest agreement between C&C and the Sterling Retailers; the actual draft documents are not included and no attorney impressions or advice are conveyed. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 185 (N.D. Ill. 2018). The sole exception concerns an email, contained in the chains in documents 54, 56, 58, 59, 61 and 62 dated November 26, 2018 and sent at 4:50 p.m. from Fischer to Friedman. Because we find that this particular email contains legal advice from one attorney to another, it is covered by the attorney-client privilege, and because we previously determined that the parties represented by those two attorneys share a common interest, Defendants may redact the single November 26, 2018 at 4:50 p.m. email from each email chain in which it appears, before producing the remainder of the chains. Document 166 does not contain the privileged communication and must be produced in its entirety. Document 139 is nothing more than an email header that contains no information at all and also must be produced in its entirety.

With no underlying privilege attached to the documents (with the single exception as noted), the common-interest exception to privilege waiver does not apply, and no basis exists to withhold the documents. Plaintiffs' motion is granted as to Document Nos. 139 and 166 and granted in part and denied in part as to Document Nos. 54, 56, 58, 59, 61 and 62.

### 2. Privileged Documents Protected from Disclosure by the Common-Interest Doctrine

We move next to documents that indeed are otherwise privileged, and that remain protected from disclosure as a result of the common legal interest between C&C and the Sterling Retailers.

*Document Nos. 2, 55, 57, 60, 138.*[2]  These documents are identified in Defendants' Privilege Log (Doc. 193-3) as "Common interests agreement with Sterling Jewelers" (Doc. No. 2), "Common Interest Agreement Between Sterling and CCJM" (Doc. Nos. 55, 57), "Revisions to Common Interest Agreement Between Sterling and CCJM" (Document No. 60), and "Non-Executed Draft of Common Interests Agreement" (Document No. 138).  As the log's disclosure indicates, they are versions of a common-interest agreement between Defendants C&C and Sterling Jewelers, Inc. ("Sterling").  Document No. 2 is signed only by Defendant Robert G. Connolly of C&C, but Document No. 55 is signed by Connolly and a representative of Sterling. Document Nos. 57 and 138 are unsigned drafts, and Document No. 60 is a marked-up or revised draft.  Plaintiffs argue that "there is no indication" that the agreement, "even if executed, constitutes a communication that related to anyone seeking legal advice." Pl. Mem. at 11.  That is true insofar as the Defendants' privilege log does not identify the senders and recipients for these documents, but the Court infers from the circumstances that they were shared in draft form between Defendants and their respective attorneys, and between the Sterling Retailers and their respective attorneys.  Later, the signed version (Document No. 55) was shared between the Sterling Retailers and Defendants as the final memorialization of their common interest agreement, and the Court will infer that attorneys communicated the execution copies of the document to their clients as

---

[2] The numerical designations for the documents reviewed *in camera* correspond to the numbers assigned to them in Defendants' Privilege Log (D.E. 193-3).  The Court has done the same below in Part II for its review of the documents withheld by Plaintiffs and logged on Plaintiffs' Privilege Log (D.E. 195-3).

well. All these documents therefore were attorney-client communications sent confidentially in connection with the rendering of legal services, and as such they are attorney-client privileged.[3] The Court also infers from the circumstances that the agreement drafts, markup, and partially and fully executed versions were communicated between C&C and the Sterling Retailers, leaving the question of whether they are protected by the common-interest privilege. Having found that C&C had a common legal interest at the time with the Sterling Retailers, the finds that Document Nos. 2, 55, 57, 60, and 138 are protected by the common-interest doctrine, so Plaintiffs' motion is denied as to those documents.

*Document No. 168.* This document consists of two November 2, 2018 email communications. The first in time is from non-attorney staff at the Sterling Retailers to Laura Friedman, the Sterling attorney, and the Court's *in camera* review confirms that it is privileged communication to Friedman, made in confidence for the purpose of Friedman's rendering of legal services to the Sterling Retailers. The second communication is from a Sterling Retailers non-attorney staff member to Connolly at C&C, forwarding the privileged internal Sterling communication to Connolly, and breaking the privilege only if no common-interest protection applies. Having found that such protection does apply, the Court denies Plaintiffs' motion to compel as to Document No. 168.

---

[3] The Court recognizes that Defendants have given the Court very little, if anything, to indicate that the agreement versions were sent to the clients with instructions to keep them confidential, but nor does the record contain any suggestion that the versions were shared with anyone outside of C&C and the Sterling Retailers.

**B.** **Communications Between C&C and Helzberg (Table B)**

    **1.** **Non-Privileged Documents Not Covered By the Common-Interest Doctrine**

As the Court proceeded with the Table A documents, we begin with the C&C/Helzberg communications sought in Table B of Plaintiffs' Second Motion that do not warrant common-interest protection because they are not otherwise privileged.

*Document No. 169.* This chain of three emails between Helzberg marketing executive Julie Yoakum and Connolly of C&C is not privileged in the first instance. No attorney-client privilege attaches to the document because Yoakum and Connolly are non-attorneys, no attorney is included on the communication, and the emails do not seek or contain legal advice; nor do they relate to the provision of professional legal services. Instead, Yoakum reached out to Connolly to discuss patent expiration, Connolly responded, and Yoakum emailed him again, asking to speak regarding "the current state of the patents" so she could share her "current" understanding, but she did not convey anything about what that understanding was, any attorney mental impressions in anticipation of litigation, or any other privileged information or communication in this email. Because the common-interest doctrine is a limited form of privilege protection that extends only to *privileged* documents that are shared among entities with common legal interests, the common-interest doctrine does not extend to Document No. 169. If it did, then virtually all communications between entities with common interests would automatically be shielded from discovery, even if not covered by any privilege, and that is not the law. Plaintiffs' motion is granted as to Document No. 169, notwithstanding the existence of a common legal interest between Helzberg and C&C, because Document No. 169 is in no way privileged.

*Document No. 170.* Document No. 170, a four-email chain that concludes with the logged entry, a February 1, 2019 communication from non-attorney Yoakum to Connolly, also is not

privileged in the first instance. In forwarding to Connolly the three other emails farther down in the chain, Yoakum conveyed to Connolly the fact that Yoakum had sought counsel's advice, but she does not say more about the nature of the request for advice or about what the advice was or might be. Then, in the three emails she forwarded, no attorney-client communication or work-product mental impressions are found. Instead, these three communications as forwarded by Yoakum to Connolly were communications between Helzberg *and Plaintiffs* about the '734 Patent and its licensing. Consequently, Yoakum's having told C&C that she was consulting Helzberg's attorney, in an email chain that included the three communications between Helzberg and Plaintiffs, are not privileged and not protected by the common-interest doctrine, even if they occurred at a time when Helzberg had a common legal interest with C&C. Not all communications between parties with a common interest are shielded from disclosure by the common-interest doctrine, which, as we have explained, covers only privileged documents shared outside the privileged bubble with a party with whom the sharer had a common legal interest. Plaintiffs' motion is granted as to Document No. 170.

## 2. Privileged Documents Protected from Disclosure by the Common-Interest Doctrine

We move next to C&C/Helzberg communications documents that are privileged in the first instance and thus protected from discovery under the common-interest doctrine.

*Document Nos. 69-70.* Document Nos. 69 and 70 are two August 20, 2018 emails between Connolly and C&C attorney Fischer, and they are attorney-client privileged, as nothing about them indicates they were sent to anyone else, and they relate to the rendering of legal advice or services.

*Document Nos. 103, 151, 130.* Document No. 103 is a string of six emails, the two most recent of which are attorney-client privileged February 1, 2019 emails between attorney Fischer and his client Connolly, not shared with anyone else. Document No. 151 is duplicative, containing

the bottom five emails in the Document No. 103 chain. The four emails comprising the bottom part of the Document Nos. 103 and 151 email chains include communications between non-attorney Yoakum of Helzberg and Connolly, and they also include documents that are clearly attorney-client privileged communications internal to Helzberg. The question then is whether common-interest protection extends to the privileged communications internal to Helzberg once Yoakum forwarded them to Connolly. Yoakum's sending of these communications to Connolly did not waive Helzberg's attorney-client privilege because, as the Court has found, C&C and Helzberg at the time had a common legal interest. Accordingly, Plaintiffs' motion is denied as to Document Nos. 103 and 151 because the underlying communications that Helzberg shared with C&C are otherwise privileged, and the sharing of them outside Helzberg was done under common-interest protection.

Document No. 130 is a January 16, 2019 email described in the log as "Forwarding communications with Helzberg regarding patent," and in that email, attorney Fischer forwarded to client Connolly six emails that comprise a written conversation Fischer had with Yoakum, initially in August and September 2018, and then resuming on January 16, 2019. From *in camera* review, the Court concludes that the component parts of this email string include communications containing legal advice or work-product attorney mental impressions internal to Helzberg. The remaining content of the string is so closely related to those privileged, internal Helzberg communications that disclosure of this string would disclose the internal Helzberg communications, which are privileged in the first instance. For largely the same reason why Plaintiffs' Second Motion is denied as to Document Nos. 103 and 151, the motion is denied as to Document No. 130.

## II.     Defendant C&C's Fourth Motion To Compel

The Fourth Motion (D.E. 194), filed by C&C shortly after the Plaintiffs' Second Motion to compel and on the same day, alleges that Plaintiffs are wrongfully invoking common-interest protection over 14 documents that are dated in 2018 and 2019 and that are logged on Plaintiffs' privilege log.  Defendants argue that the 2019 West Royalty Suit, and to some extent the 2021 West Royalty Suit, establish that Plaintiffs and West have an adverse relationship that defeats any claim by them to a common-interest protection for the withheld 2018 and 2019 documents.  Def. Mem. at 5; Def. Reply at 4.[4]

---

[4] The Reply Memorandum has been filed under seal, on C&C's "unopposed" motion (D.E. 211), asking that the entire reply and exhibits be sealed "out of an abundance of caution" because Plaintiffs wished one of the exhibits, the 2007 Agreement or Exhibit D, to be filed under seal, a proposition with which C&C disagreed in principle.  The result appears to have been a reflexive "unopposed" motion that did not make very clear that (1) the entire Exhibit D was sought to be sealed (with no effort to redact any content that lawfully may be filed under seal), and (2) that all the exhibits and the entire reply memorandum also were within the motion's request for sealing.  The district court granted this unopposed motion (D.E. 214). The magistrate judge will not revisit that ruling except to require that the entire reply and its exhibits, except for Exhibit D, be the subject of a renewed motion to seal that complies with applicable Seventh Circuit law as to what lawfully may be filed under seal, *if* any party wishes for those materials to remain sealed.  Such motion must be filed by noon on December 10, 2021, or the Court will order the reply and the exhibits (except for Exhibit D) to be unsealed.  Seventh Circuit law as to what court-filed discovery materials may be sealed is well-established.  See *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (noting that public "has a presumptive right to access discovery materials that are filed with the court"); *Baxter Int'l, Inc. v. Abbott Labs*., 297 F.3d 544, 545-46 (7th Cir. 2002) (stating that filed discovery documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality... In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of sexual assault) is entitled to be kept secret"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000) ("Many a litigant would prefer that the subject matter of a case... be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing."); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945-46 (7th Cir. 1999) (warning courts not to allow parties "to seal whatever they want" and urging them to apply "a neutral balancing of the relevant interests" in connection with any good-cause determination presented by a motion to seal).  Nothing about any of these cases authorizes the wholesale sealing of an entire brief and all of its exhibits based on grounds to seal just one of the exhibits, and the brief itself is a document in which C&C sets forth reasons why the Court ought to exercise the public judicial power in a particular way.  The Court will take any renewed motion to seal as a certification that the movant's counsel has reviewed and understood the foregoing cases, and that, as any such motion should aver, the request for relief is in compliance with the law of those cases.

In essence, Defendant asserts that under the "adverse interest" exception to the common-interest privilege (which, remember, is an exception to waiver of an underlying privilege), Plaintiffs' communications with West are not part of any common legal interest and thus cannot be withheld, because West sued Plaintiffs in 2019 and again in 2021 to collect unpaid patent royalties. Defendant does not dispute that the 2018-2019 communications are subject to an underlying, privilege, namely attorney-client, and nor does it seriously dispute that West and Plaintiffs had a common legal interest in the validity and enforcement of the '734 Patent and of the 2011 License Agreement. *See In re Regents of Univ. of Cal.,* 101 F.3d 1386, 1390 (Fed. Cir. 1996) (granting writ of mandamus to overturn district court's discovery order and holding that patent licensor and licensee had a common legal interest in the exclusivity of the license and in the validity and enforceability of the patents).

Under the "adverse interest" exception, a common interest between two entities no longer exists after they become adverse to each other. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005); *Lislewood*, 2015 WL 1539051, at *5. But typically, the "adverse exception" to the common-interest doctrine will prevent a party from asserting the common-interest protection against another to whom it later has become adverse. *See Lislewood*, 2015 WL 1539051, at *5. Here, Plaintiffs are not asserting the protection against West to force production of withheld documents, but against Defendants' efforts to compel production, in litigation between Plaintiffs and Defendants, of privileged communications between West and Plaintiffs, who withheld them on account of their common interest with West. Some degree of adversity does now exist, or existed as of mid-2019 (and 2021, a time not very relevant to the communications sought to be disclosed) between Plaintiffs and West over '734 Patent royalties, but that kind of adversity does not defeat the common-interest protection as it has been asserted here by Plaintiffs.

20

In *Lislewood*, for example, the plaintiff property lessee sued a lessor and sought common-interest communications between the lessor and a sublessor about matters such as the condition of the property; the lessor then filed a third-party complaint for indemnity against the sublessor, but the indemnity claim generated an adverse interest that did not defeat the common interest covering the earlier communications about the subject matter of the lease. *Id.* at *1, 5. In *Lislewood*, the lessor and the sublessor were "not asserting their privileges against each other as to the documents sought by Lislewood. Accordingly, the adverse-interest exception does not apply." *Id.* at *5.

The same is true here, but additionally, the royalty dispute between West and Plaintiffs is collateral to the matters West and Plaintiffs discussed in the 14 emails from 2018 and 2019. The Court has reviewed those emails *in camera* and has no trouble concluding that communications have nothing whatsoever to do with West's unpaid royalty claims and instead bear upon matters concerning enforcement and validity of the '734 Patent, as to which Trent was the licensee and Plaintiffs were the licensors and had a common legal interest. Moreover, Defendant did not seriously dispute that Plaintiffs' analogy to the facts of *Lislewood* defeats Defendant's motion to compel because the adverse interest exception does not apply here. In Defendant's reply brief, Defendant did not address *Lislewood* or Plaintiffs' argument that the adverse interest is limited to adverse-interest situations that contradict, or at least relate to, the common legal interest asserted as the basis for withholding the documents. Def. Reply, passim. Instead, Defendant brought up, for the first time in the briefing, the recent 2021 West Royalty Suit (which also is totally unrelated to the withheld 2018-2019 communications) and Defendant's pending Rule 19 motion to assert certain counterclaims without joining West as a party. *Id.* The Rule 19 motion (D.E. 205, 208) is not before the magistrate judge.

Finally, the Court is denying Defendant's request to compel Plaintiffs to produce, in response to Document Request Nos. 20 and 21, "all" communications between Plaintiffs (and their lawyers) and West (and his lawyers) "related to" the 2019 West Royalty Suit. This request by Defendant treads old ground. As the Court determined earlier in denying a very similar (if not identical) request for "[a]ll communications" concerning the 2019 West Royalty Suit, *see* 5/11/21 Order (D.E. 155) at 7, the request is overbroad and thus disproportionate to the needs of the case, notwithstanding the possibility that the 2019 West Royalty Suit. or some aspect of it, might be relevant to a claim or defense in the case. The overbreadth and disproportionality of this request is now law of the case, and the Court will not revisit its conclusion in that respect.

Defendants' Fourth Motion to Compel is denied in its entirety. The Court does not reach Plaintiffs' suggestions that Defendant raised issues with Plaintiffs' assertion of common-interest privilege protection at the last minute and in apparent response to Plaintiffs having pressed Defendants on their assertion of common-interest privilege as to communications with the Sterling Retailers and Helzberg, as an attempt to confuse the issues. Rather than try to examine any party's intent or motive, the Court denies Defendants' Fourth Motion to Compel on its merits alone.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED:  December 9, 2021**